[805 NE2d 1037, 773 NYS2d 735]

ASPRO MECHANICAL CONTRACTING, INC., et al., Respondents, v
FLEET BANK, N.A., Appellant.

Argued January 7, 2004; decided February 12, 2004

**POINTS OF COUNSEL**

*Cleary, Gottlieb, Steen & Hamilton,* New York City (*Evan A. Davis, Mitchell A. Lowenthal* and *Rupa Mitra* of counsel), for appellant. I. Defendant-appellant was not required to file a notice of lending. (*United Lakeland A.C. Co. v Ahneman-Christiansen, Inc.,* 33 Misc 2d 606, 18 AD2d 1022; *Heard v Cuomo,* 80 NY2d 684; *Matter of ELRAC, Inc. v White,* 299 AD2d 546; *Matter of Kamhi v Planning Bd. of Town of Yorktown,* 59 NY2d 385.) II. The lower courts failed to construe the statute in light of all its purposes, including its purpose to strike a balance. (*Matter of Judge Rotenberg Educ. Ctr. v Maul,* 91 NY2d 298; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Matter of Duell v Condon,* 84 NY2d 773; *Le Drugstore Etats Unis v New York State Bd. of Pharm.,* 33 NY2d 298; *New York State Bridge Auth. v Moore,* 299 NY 410.)

*Zisholtz & Zisholtz, LLP,* Mineola (*Stuart S. Zisholtz* of counsel), for respondents. I. Appellant failed to file a notice of assignment and a notice of lending. (*National Sur. Corp. v Fishkill Natl. Bank,* 61 Misc 2d 579, 37 AD2d 537; *Lincoln Natl. Bank of City of N.Y. v Pierce Co.,* 228 NY 359; *American Blower Corp. v James Talcott, Inc.,* 10 NY2d 282; *Adirondack Trust Co. v Bien & Assoc.,* 168 Misc 2d 919; *Edison Elec. Illuminating Co. of Brooklyn v Frick Co.,* 221 NY 1; *General Ins. Co. of Am. v Tilcon N.Y.,* 294 AD2d 195.) II. Appellant diverted trust funds. (*Canron Corp. v City of New York,* 214 AD2d 115; *Raisler Corp. v Uris 55 Water St. Co.,* 91 Misc 2d 217; *Eljam Mason Supply v I.F. Assoc. Corp.,* 84 AD2d 720; *Glens Falls Ins. Co. v Schwab Bros. Trucking,* 55 Misc 2d 324; *New York Natl. Bank v Primalto Dev. & Constr. Co.,* 270 AD2d 22; *Caristo Constr. Corp. v Diners Fin. Corp.,* 21 NY2d 507; *West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.,* 87 NY2d 148; *Naiztat Iron Works v Tri-Neck Constr. Corp.,* 62 Misc 2d 228; *Glazer v Alison Homes Corp.,* 62 Misc 2d 1017; *Schwadron v Freund,* 69 Misc 2d 342.) III. Appellant's attempt to raise new issues on appeal should not be

countenanced. (*Sacks v Stewart,* 75 AD2d 536; *Fonda v Nationwide Mut. Fire Ins. Co.,* 99 AD2d 680; *Broida v Bancroft,* 103 AD2d 88.)

## OPINION OF THE COURT

GRAFFEO, J.

In 1989, Berry Street Corporation entered into a turnkey contract of sale with the New York City Housing Authority (NYCHA) whereby Berry Street would acquire title to three parcels of land in Brooklyn, construct residential buildings on the parcels and convey title to the improved property to NYCHA. The contract specified periodic payments from NYCHA to Berry Street and its general contractor as the improvements were completed.

Norstar Bank made a construction loan to Berry Street in 1992 as evidenced by a building and project loan agreement, building loan mortgage and project loan mortgage. The loan agreement and mortgages were filed with the Kings County City Register's Office in accordance with section 22 of the Lien Law and the mortgages contained the requisite Lien Law § 13 covenant stating that the mortgages were subject to the trust provisions of that section.

As additional security for the loan, Berry Street simultaneously assigned all of its right, title and interest in the turnkey contract to Norstar (hereinafter referred to as Fleet, Norstar's successor in interest and the defendant here). In conjunction with the assignment, NYCHA agreed to make payments directly to Fleet until Fleet notified NYCHA that Fleet's loans to Berry Street were fully repaid. The filed mortgages revealed that Berry Street had assigned its turnkey contract to Fleet; however, the specific rights and responsibilities assigned were not disclosed. The assignment itself was not filed.

NYCHA purchased the three sites and their improvements from Berry Street over the course of three years. Because Berry Street had not yet fully repaid the construction loan to Fleet, NYCHA paid the purchase amounts for each improved parcel directly to Fleet. Fleet applied these amounts to the debt owed it by Berry Street under the loan agreement and eventually discharged its mortgages on the properties.

Plaintiffs—individuals and entities who had subcontracted with Berry Street to provide labor, services and materials for the project—commenced a special proceeding to recover Lien

Law article 3-A trust funds allegedly diverted by Fleet and NYCHA. Fleet moved to dismiss the special proceeding, arguing that its status in the transaction was solely that of a lender-mortgagee and not a trustee subject to article 3-A of the Lien Law. Plaintiffs opposed the motion and cross-moved to amend the petition to add claims pertaining to Berry Street's assignment of its turnkey contract rights to Fleet, which plaintiffs alleged they learned of only upon receipt of NYCHA's answer in the special proceeding.

Supreme Court denied Fleet's motion to dismiss and granted plaintiffs' cross motion to file an amended petition. Ultimately, the special proceeding was dismissed without prejudice, and plaintiffs commenced this action pursuant to Lien Law § 77.[1] In the complaint, plaintiffs alleged that they were owed monies on their subcontracts and that Fleet had diverted trust funds by paying itself prior to paying plaintiffs' claims. Plaintiffs urged that Fleet's failure to file a notice of assignment or a notice of lending deprived Fleet of any affirmative defenses it might otherwise have had and sought to recover for Fleet's "violation of [its] fiduciary relationship under the trust."

After denial of its motion to dismiss the new action, Fleet answered and raised numerous affirmative defenses. As it had contended during the special proceeding, Fleet again asserted that it was "not a statutory trustee and the funds paid to Fleet do not constitute trust assets" and that plaintiffs' claims were barred by virtue of Fleet's "superior mortgage interest." Plaintiffs moved for summary judgment on the issue of liability and Fleet cross-moved for summary judgment dismissing the complaint.

Supreme Court granted plaintiffs' motion, denied Fleet's cross motion and ordered a trial on damages.[2] On Fleet's appeal, the Appellate Division affirmed, holding that Fleet's repayment to itself of the loans made to Berry Street was a diversion of trust assets. The parties stipulated to damages and judgment was entered for plaintiffs in the amount of $1,904,923.48. Fleet now appeals the judgment, bringing up for review the Appellate Division's order of affirmance.

In this appeal, Fleet no longer disputes that the payments it received via the assignment constituted article 3-A trust assets

---

1. Upon plaintiffs' motion, the action was certified as a class action.

2. Supreme Court granted NYCHA's motion for summary judgment dismissing the claims against it so it is no longer a party in this action.

and concedes its trustee status as a result of the assignment. Fleet now argues that its self-payment—at a time when it contended that the funds were not trust assets—was nevertheless permissible because it used the money to pay its properly recorded secured loans, which were superior to plaintiffs' claims pursuant to the Lien Law's statutory priority provisions.

## The Lien Law Trust Provisions

Article 3-A of the Lien Law creates "trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, laborers, as well as specified taxes and expenses of construction" (*Caristo Constr. Corp. v Diners Fin. Corp.*, 21 NY2d 507, 512 [1968]; *see* Lien Law §§ 70, 71). We have repeatedly recognized that the "primary purpose of article 3-A and its predecessors [is] 'to ensure that "those who have directly expended labor and materials to improve real property [or a public improvement] at the direction of the owner or a general contractor" receive payment for the work actually performed' " (*Matter of RLI Ins. Co. v New York State Dept. of Labor*, 97 NY2d 256, 264 [2002] [quoting *Canron Corp. v City of New York*, 89 NY2d 147, 155 (1996)]; *see also West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.*, 87 NY2d 148, 156-157 [1995]). As the Law Revision Commission noted in its 1959 Report recommending numerous amendments to the law,

> "enactment of the trust fund provisions was prompted by the frequency of cases in which laborers and materialmen were in fact not paid. The trust concept was intended precisely to forbid that an owner, contractor or subcontractor act merely as entrepreneur and was intended to require that he act, instead, as fiduciary manager of the fixed amounts provided for the operation" (1959 Report of NY Law Rev Commn, at 214, reprinted in 1959 NY Legis Doc No. 65, at 30).

To ensure this end, the Lien Law establishes that designated funds received by owners, contractors and subcontractors in connection with improvements of real property are trust assets and that a trust begins "when any asset thereof comes into existence, whether or not there shall be at that time any beneficiary of the trust" (Lien Law § 70 [1], [3]; *see City of New York v Cross Bay Contr. Corp.*, 93 NY2d 14, 19 [1999]). Funds received by an owner under building loan contracts and building loan

mortgages are trust assets and the statute requires owner-trustees to apply such assets for payment of the "cost of improvement" (*see* Lien Law § 70 [5]; § 71 [1]). Cost of improvement is defined in the Lien Law to encompass "expenditures incurred by the owner in paying the claims of a contractor, an architect, engineer or surveyor, a subcontractor, laborer and materialman, arising out of the improvement, . . . and shall also include . . . sums paid to discharge building loan mortgages whenever recorded" (*id.* at § 2 [5]). The use of trust assets for a nontrust purpose—that is, a purpose outside the scope of the cost of improvement—is deemed "a diversion of trust assets, whether or not there are trust claims in existence at the time of the transaction, and if the diversion occurs by the voluntary act of the trustee or by his consent such act or consent is a breach of trust" (Lien Law § 72).

The Lien Law further imposes duties upon trustees in the operation of the trust. A statutory trustee must maintain books and records of the trust including entries for trust assets receivable, trust accounts payable, trust funds received and trust payments made with trust assets, and make those records available for inspection by beneficiaries (*see id.* at §§ 75, 76). In addition, the records must reflect any "[t]ransfers in repayment of or to secure advances made pursuant to a 'Notice of Lending' " (*id.* at § 75 [3] [E]). The statute expressly vests discretion in the trustee "to determine the order and manner of payment of any trust claims and to apply any trust asset to any purpose of the trust" (*id.* at § 74 [1]).

Of special importance in this case, the Lien Law also incorporates a mechanism for trustees to alert beneficiaries to the distribution of trust assets to repay advances made by lenders (*see* Postner & Rubin, New York Construction Law Manual § 9.76, at 362). Trustees or lender-transferees may file a "Notice of Lending" to "protect the lender's right to repayment from trust funds" (*id.*; *see* Lien Law § 73). Such notice must be filed in the county clerk's office in the "lien docket" or other official record and indexed by the name of the trustee to whom the advances are made (*see* Lien Law § 73 [3] [a]). The notice is to be filed within five days of the payment and sets forth the names and addresses of the persons making the advances and to whom or on whose behalf they are made, the date of any advances made prior to the filing for which the filing is intended to be effective and "the maximum balance of advances outstanding to be permitted by the lender pursuant to the notice" (*see id.* at [3] [b] [6]).

These filing provisions promote the legislative intent to assure "public notice of any transaction of the owner, contractor or subcontractor that may lead to depletion of funds available for future trust claims, even where the depletion merely repays advances that were in fact used to pay trust claims accruing at an earlier [d]ate" (1959 Report of NY Law Rev Commn, at 216). Such record notice provides "persons who furnish materials and services in reliance on the trust assets receivable by the trustee at a later stage of the improvement . . . notice that those assets have been anticipated for current expense" (id.).

Pursuant to section 73 of the Lien Law, the proper filing of a "Notice of Lending" is an affirmative defense to an action charging a trustee with a diversion of trust assets or an action to recover diverted assets from a transferee. In an action against a trustee, the notice of lending evidences that the alleged diversion "was made as security for or in consideration of or in repayment of advances made to him as trustee or on his behalf as trustee . . . , and that such advances were actually applied for a purpose of the trust" (id. at § 73 [2]).

## Application of the Statute

Under Lien Law article 3-A, the funds NYCHA owed Berry Street under the turnkey sale contract were trust assets subject to the rights of trust beneficiaries and it is undisputed that plaintiffs, as subcontractors on the project, are trust beneficiaries (see Lien Law §§ 70, 71). Berry Street assigned its rights under the NYCHA contract to Fleet and, as a result, NYCHA's direct payment of the sale proceeds to Fleet rendered Fleet a statutory owner-trustee. As a statutory trustee, Fleet was obligated to act "as fiduciary manager" of the funds (1959 Report of NY Law Rev Commn, at 214). Fleet therefore owed the beneficiaries a duty of loyalty and was required "to administer the trust solely in the interest of the beneficiaries" (2A Fratcher, Scott on Trusts, at § 170 [4th ed]; Restatement [Third] of Trusts § 170 [1]).

In these circumstances, Fleet's application of the trust assets to repay its loans to Berry Street—without acknowledging its status as trustee and providing notice to trust beneficiaries of the transfer—constituted a breach of its fiduciary duty. Fleet asserts that the inclusion of the reference to the assignment in its mortgages was the equivalent of record notice to potential claimants of Fleet's priority interest in the trust assets. There is no question that by complying with the filing and covenant

requirements of Lien Law § 13 (2) and § 22, Fleet's building loan mortgages obtained priority over subsequently filed mechanics' liens.

This argument overlooks the important fiduciary considerations adopted by the Legislature to safeguard trust beneficiaries. Potential trust beneficiaries might have been able to ascertain Fleet's claim of priority as a secured mortgage lender but nothing in the mortgage documents identified Fleet as a trustee of the article 3-A assets. Indeed, Fleet's own posture during the early stages of this litigation denied that the assignment rendered it a trustee. In essence, Fleet seeks to escape the effect of the assignment by arguing that plaintiffs should have appreciated the implications that Fleet itself refuted. Even if plaintiffs had surmised Fleet's role as the trustee by examining the mortgage documents, those filings would not have informed beneficiaries that Fleet planned to use trust assets to repay itself.

We conclude that the filing by Fleet of a notice of lending—although not necessarily the only device available—would have satisfied Fleet's fiduciary duty to provide notice to the trust beneficiaries of its use of trust assets to discharge Berry Street's debt. Such a filing would fulfill the legislative purposes of article 3-A and eliminate any taint of self-dealing by a trustee who is also a trust beneficiary. Notably, had Fleet filed a notice of lending regarding its use of the trust assets to repay itself, the beneficiaries could have ascertained that (1) the trust assets were being depleted and (2) Fleet was a trustee acting as both transferor and transferee of those funds (see 1959 Report of NY Law Rev Commn, at 216; Lien Law § 73). Nothing in the filings relied upon by Fleet imparted this information to trust beneficiaries.[3] Hence, Fleet failed to file any document that served as adequate notice to beneficiaries of its status as a trustee and its depletion of trust funds to repay its loans.

Although Fleet breached its fiduciary obligation, the issue of damages for such a breach is not before us because the parties stipulated to damages prior to this appeal. Thus, we have no occasion to address the conclusion reached by the lower courts that Fleet's repayment to itself invalidated its statutory priority

---

3. Moreover, there is no information in the record indicating whether Fleet complied with the statutory record-keeping obligations of trustees (see Lien Law § 75). Such compliance seems unlikely considering Fleet's initial posture in this litigation.

as a secured mortgage lender and rendered Fleet liable to plaintiffs for the full amount of the transferred trust funds.

Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT and READ concur; Judge R.S. SMITH taking no part.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.