OPINION OF THE COURT
Emily Pines, J.
This case presents a classic collision between law and equity. It is ancient hornbook law that where the underlying issue to be determined is governed exclusively by legal principles, the court lacks the authority to utilize equity to provide a “better” remedy. (Donovan v Finn, 1 Hpk ch 59 [1823].) Having paid a general contractor in full covering the fees of all that entity’s trust beneficiaries — the subcontractors — on a construction project, an owner then pays several of the subcontractors upon their threat of filing mechanic’s liens. The general contractor, having filed for bankruptcy protection, is not reachable before this court; yet its principals have pleaded guilty and are currently serving criminal sentences for conversion and diversion of the general contractor’s funds for their personal use. The owner now seeks redress against these individuals, as an asserted subrogee of the rights of the subcontractors. Can it do so; and is that answer different from the one of whether it should be permitted to do so?
Ordered that the motion (motion sequence No. 008) by plaintiff for partial summary judgment and the motion (motion sequence No. 009) by defendants for summary judgment dismissing the complaint are decided as set forth below.
Factual and Procedural History
Plaintiff, Broadway Houston Mack Development LLC (BHMD), commenced this action against defendants for violations of article 3-A of the Lien Law, diversion and conversion of trust funds for defendants’ own purposes, and breach of fiduciary duty by the filing of a summons and verified complaint on or about June 9, 2005. The gravamen of the complaint is that defendants, Ted Kohl and James Stumpf, in their capacity as principals and/or officers of IDI Construction, Inc., diverted certain trust funds paid to them in conjunction with the development and construction of a multi-story office building on property located at 610 Broadway, New York, New York (the subject premises). The record reflects that plaintiff was the ground lessee of the subject premises and by construction management agreement (the agreement) dated June 17, 2003 retained IDI as *1003 the general contractor for the construction project. In accordance with the agreement, IDI retained certain subcontractors to perform work on the project.
Plaintiff alleges that it paid IDI in excess of $7 million, which was intended to be used for the payment of the subcontractors for work performed under the project. This is not a disputed fact. However, plaintiff asserts that defendants diverted these trust funds to their own use and failed to pay the subcontractors the full amounts due and owing.[1] Plaintiff states that the subcontractors, upon failure of the general contractor to make payment, threatened to file mechanic’s liens on the subject premises, demanded payment from plaintiff for the work and threatened to cease performance on the construction project. Therefore, although plaintiff admits it paid IDI in full under the agreement, plaintiff made certain direct payments to some of the subcontractors on the project. Plaintiff states that in or about July 28, 2004, it made “direct payments in total amount of $902,370.10 to certain subcontractors for all outstanding invoices through May of 2004 in order to discharge or waive mechanic’s liens as well as keep the Project going.”
The submissions further reflect that both defendants pleaded guilty to criminal charges of grand larceny arising out of their activities with IDI. Copies of the plea agreements are annexed to the moving papers.[2]
The complaint sets forth four causes of action: the first cause of action alleges that plaintiff was the beneficiary of the trust funds held by IDI and that defendants have diverted the trust funds to their own personal use in violation of Lien Law § 71; the second cause of action alleges that defendants converted the trust funds for their own purposes in violation of the Lien Law; the third cause of action alleges that defendants breached their fiduciary duty by using the trust funds for their own purposes instead of paying the trust fund beneficiaries (i.e., the subcontractors); and the fourth cause of action sought injunctive relief on the ground that assets of the trust fund were being used for the improvement of defendants’ real property and sought to re *1004 strain the distribution of the proceeds of the sale of the real property.
The Motions
Plaintiff now moves for an order granting partial summary judgment on the first cause of action of the complaint and defendants move for summary judgment dismissing the complaint in its entirety. Plaintiff argues that it is entitled to summary judgment on the sole legal issue of whether it has been subrogated to the rights of the subcontractors by the virtue of its making direct payments to those subcontractors once defendants diverted the trust funds. Plaintiff argues that it was forced to make these payments to the subcontractors for two reasons: (1) plaintiff was required to clear and avoid future mechanic’s liens to avoid defaulting on contractual obligations to third parties, including the landlord and lender; and (2) plaintiff was required to prevent these subcontractors from ceasing performance on the construction project in order to mitigate its own damages.
Plaintiff states that between June of 2003 and June of 2004, it advanced to IDI a total of $7,514,750 in connection with the construction project and that such funds constituted trust funds pursuant to the Lien Law for the benefit of the subcontractors and suppliers on the project. During this time period however, plaintiff argues that defendants Kohl and Stumpf diverted several millions of dollars of these trust funds, as evidenced by certain checks annexed to the moving papers, and the plea agreements in which Kohl and Stumpf admitted they had received monies entrusted to IDI for the payment of subcontractors on another project. Plaintiff asserts that after it made payments to IDI, in July of 2004, several subcontractors began demanding payment directly from BHMD and threatened to cease work on the construction project and/or file mechanic’s liens. Plaintiff states that it decided to pay the subcontractors directly, despite having already advanced all such funds to IDI, because it believed if it did not make such payments, it would be in violation of certain contracts with third parties. Specifically, plaintiff alleges that it believed it would be in breach of the following contracts: (1) cash collateral agreement with North Fork Bank, dated June 9, 2003; (2) completion guarantee in favor of North Fork Bank, dated June 9, 2003; (3) Nomura Credit & Capital, Inc. agreement, dated July 15, 2005; (4) ground lease dated May 29, 2003; and (5) amended and restated *1005 leasehold mortgage with North Fork Bank, dated June 9, 2003. Plaintiff argues that each of these agreements contained covenants placing plaintiff in default if mechanic’s liens were filed against the construction project, resulting in possible foreclosure and eviction from the subject premises.
Based on the foregoing, plaintiff argues that the direct payments to the subcontractors were not voluntary or gratuitous but rather plaintiff was protecting its legal interests when making these payments. Thus, plaintiff argues, it is subrogated to the rights of the subcontractors (the trust beneficiaries), and is entitled to recover for the amounts paid. Plaintiff urges the court to recognize that there is no genuine issue of fact that IDI was the trustee of the Lien Law trust funds, held for the benefit of the subcontractors, that Kohl and Stumpf diverted and/or converted the trust funds for their own personal benefit, and that plaintiff paid the subcontractors directly to protect its legal interests and thus is entitled to recover the amounts paid.
Defendants oppose the motion and cross-move for summary judgment dismissing the complaint in its entirety. Defendants submit, inter alla, a copy of the pleadings, discovery demands and responses, a statement of uncontested facts pursuant to rule 19-a of the Rules of the Commercial Division, an affirmation by counsel and a memorandum of law. Defendants argue, in sum, that plaintiff lacks standing to bring an action on the basis of diversion, conversion or breach of fiduciary duty and has failed to state causes of action upon which relief can be granted. Thus, they urge the court to dismiss the complaint in its entirety.
Defendants argue that plaintiff, as the property owner, is not a beneficiary under the Lien Law, and thus, lacks standing to bring this action. Defendants further assert that plaintiffs payments to the subcontractors were gratuitous and thus, plaintiff cannot be subrogated to any rights. In this regard, defendants argue that plaintiff was an “owner” and not a surety or guarantor of IDI’s debts and thus, any payments to the subcontractors were wholly gratuitous and plaintiff cannot be subrogated to any rights of the beneficiaries of the trust. Further, defendants argue that since there was no privity of contract between plaintiff and the subcontractors, it had no obligation to pay the subcontractors.
Defendants also assert that any mechanic’s liens by the subcontractors were unenforceable under the Lien Law. Specifically, defendants argue that since plaintiff paid IDI (the general contractor), in full, the subcontractors were not entitled to file *1006 mechanic’s liens and any such liens must be discharged. Defendants state that since there was no money due and owing to IDI at the time the subcontractors were paid, the mechanic’s liens were unenforceable, plaintiff had no obligation to pay the subcontractors, and thus, any payments made to such subcontractors were voluntary and gratuitous. Since these payments were voluntary, defendants urge the court to recognize that plaintiff cannot be subrogated to any of the beneficiaries’ rights and thus plaintiff lacks standing and the complaint must be dismissed. Addressing plaintiff’s claims that it would be in default of certain contracts and/or agreements if mechanic’s liens were filed against the subject premises, defendants assert that none of these agreements obligated plaintiff to make any payments to the subcontractors. Moreover, defendants submit an affidavit from Matthew Riedinger, a licensed bond agent, who states that plaintiff or indeed any owner in plaintiffs position, could have obtained a “mechanic’s lien discharge bond,” in lieu of paying the subcontractors in full. Specifically, Riedinger states that such bond is an instrument which allows for the removal of a mechanic’s lien at a fraction of the cost, to wit, $14.73 per thousand or 1.5% of the amount of the bond. Thus, defendants argue, that plaintiff had an alternative to paying the subcontractors in full in order to mitigate any possible damages.
Defendants assert that IDI, the general contractor, was the trustee of the trust, not the individual defendants, Kohl and Stumpf. As such, it was IDI that owed the fiduciary duty to the beneficiaries and plaintiff, the owner, was not a beneficiary. Thus, defendants argue there was no fiduciary relationship between plaintiff and the individual defendants and the third cause of action in the complaint must be dismissed.
Finally, defendants argue that there is no proof in admissible form that defendants converted or diverted trust fund assets. Defendants assert that the only evidence proffered by plaintiff is inadmissible hearsay contained in the pleadings and that even if the statements were true, there is no proof that the funds came from money on this particular construction project, rather than one of the many other projects IDI was working on before it filed for bankruptcy.
Plaintiff opposes defendants’ motion for summary judgment and argues that defendants have failed to meet their prima facie burden of entitlement by the submission of the attorney affirmation. Instead, plaintiff asserts that the record demon *1007 strates defendants’ misappropriation of trust funds such as to warrant denial of defendants’ motion for summary judgment and to grant plaintiffs motion for summary judgment. Additionally, plaintiff argues that defendants have failed as a matter of law to refute plaintiffs claim of subrogation.
Defendants submit a reply in further support of their motion for summary judgment. Defendants reiterate that plaintiff is not subrogated to the rights of the trust fund beneficiaries, was not a guarantor of the payments to IDI’s subcontractors and the mechanic’s liens were invalid and unenforceable. Thus, defendants urge the court to recognize that plaintiff s payments to the subcontractors were voluntary and gratuitous and dismiss the complaint.
Plaintiff also submits a further reply summarizing the arguments contained in its motion and opposition papers.
Discussion
To obtain summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact. (Goldberger v Brick & Ballerstein, 217 AD2d 682 [2d Dept 1995].) The burden then shifts to the party opposing the motion to come forward with proof in admissible form demonstrating there are genuine issues of material fact which preclude the granting of summary judgment. (Zayas v Half Hollow Hills Cent. School Dist., 226 AD2d 713 [2d Dept 1996].)
In the case sub judice, counsel agree that the legal issue before the court is narrow; whether, under the Lien Law, plaintiff can recover for the amounts it paid to IDI’s subcontractors, following the payments of the full amount due and owing under the agreement to IDI. Stated differently, if an owner pays trust fund beneficiaries (to wit, subcontractors) directly for amounts admittedly owed by a Lien Law article 3-A trustee, is the owner subrogated to the rights of the beneficiaries such that it may recover directly from the trustee general contractor, or, as relevant to this case, the general contractor’s principals?
The Court of Appeals has recognized that “[a]rticle 3-A of the Lien Law creates trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, laborers, as well as specified taxes and expenses of construction.” (Aspro Mech. Contr. v Fleet Bank, 1 NY3d 324, 328 [2004] [citations omitted]; Lien Law § 71 [2].) *1008 Moreover, it is well settled that the primary purpose of article 3-A is to ensure that those who have “ ‘directly expended labor and materials to improve real property [or a public improvement] at the direction of the owner or a general contractor’ receive payment for the work actually performed.” (Matter of RLI Ins. Co., Sur. Div. v New York State Dept, of Labor, 97 NY2d 256, 264 [2002], quoting Canron Corp. v City of New York, 89 NY2d 147, 155 [1996].)
Lien Law § 77 states in relevant part as follows: “1. A trust arising under this article may be enforced by the holder of any trust claim, including any person subrogated to the right of a beneficiary of the trust holding a trust claim, in a representative action brought for the benefit of all beneficiaries of the trust.” (Emphasis added.)
Lien Law § 4 states: “(1) . . . In no case shall the owner be liable to pay by reason of all liens created pursuant to this article a sum greater than the value or agreed price of the labor and materials remaining unpaid, at the time of filing notices of such liens.”
Here, as set forth above, the issue is whether plaintiff, as the owner, has standing to maintain this action as an entity subrogated to the rights of the beneficiary subcontractors. An owner is not a beneficiary enumerated under Lien Law § 71 (2); however, a subrogee may maintain an action in its own name under article 3-A. (See J. Petrocelli Constr., Inc. v Realm Elec. Contrs., Inc., 15 AD3d 444 [2d Dept 2005].) The doctrine of subrogation encompasses situations where one party pays the debt of another “under compulsion or for the protection of some interest.” (Cohn v Rothman-Goodman Mgt. Corp., 155 AD2d 579, 580 [2d Dept 1989].) However, subrogation is not available if the payments are made voluntarily. (Bermuda Trust Co. v Ameropan Oil Corp., 266 AD2d 251 [2d Dept 1999].)
Taking into consideration the foregoing principles, the court must consider the merit of plaintiff’s argument that it was under a legal compulsion to pay the subcontractors to avoid mechanic’s liens which would put it in default or breach of various agreements. To do so, the court must examine the several agreements relied on by plaintiff as the basis for the asserted requirement to make the payments to the subcontractors. First, plaintiff relies on the amended and restated leasehold mortgage with North Fork Bank dated June 9, 2003. Section 8.07 of the mortgage provides that plaintiff will
“indemnify and hold the Mortgagee harmless *1009 against any loss or liability, reasonable cost or expense, including, without limitation, any judgments, reasonable attorney’s fees, costs of appeal bonds and printing costs, arising out of or relating to any proceeding instituted by any claimant alleging a violation by the Mortgagor of any applicable lien law, including, without limitation, any section of Article 3-A of the New York Lien Law.”
Thus, the plain language of this mortgage merely required plaintiff to indemnify and hold harmless North Fork Bank in the event of any proceeding or lien filed pursuant to article 3-A. As set forth above, such liens could clearly have been discharged based upon plaintiffs full payment to IDI. (Lien Law § 4 [1].)
Next, plaintiff relies on a cash collateral agreement with North Fork Bank, also dated June 9, 2003. In that agreement, at section 6.8, plaintiff agreed to
“keep the improvements free and clear of all mechanic’s liens, notices of intention to file mechanic’s lien, notices of pendency, stop orders or comparable liens or filing and all other Liens of any nature whatsoever (other than Permitted Exceptions) by arranging for same to be bonded over or discharged or insured over by the Title Company within forty-five (45) days” after plaintiff received notices of same.
Again, as with the mortgage, the plain language of this agreement merely required plaintiff to clear all mechanic’s liens filed by bonding said liens or having them discharged. This document did not require plaintiff to pay the full amount to the subcontractors; rather, plaintiff could have obtained discharges of these liens on the grounds that no money was due and owing to the general contractor and thus, said liens were invalid. (See Lien Law § 4 [1]; see also Albert J. Bunce, Ltd. v Fahey, 73 AD2d 632 [2d Dept 1979].) A lien will only attach to amounts due and owing to the general contractor at the time of the filing of the lien. (See e.g. Perma Pave Contr. Corp. v Paerdegat Boat & Racquet Club, 156 AD2d 550 [2d Dept 1989]; Blume, Inc. v Postal Tel.-Cable Co., 265 App Div 1062 [2d Dept 1943]; Mid-Island Lbr. & Supply Co. v Loening, 78 Misc 2d 27 [Sup Ct, Suffolk County 1974].) Alternatively, plaintiff could have bonded these liens as the agreement provides, at a fraction of the cost and remained in compliance with the clear language of the cash collateral agreement.
*1010 Plaintiff additionally relies on its lease agreement with Rusabo 610 LLC, specifically section 21.02. That section, like the cash collateral agreement, provided that if any lien was filed against the subject premises, plaintiff would cause same to be “discharged of record or adequately bonded” within 60 days. As discussed above, the plaintiff was not obligated by the plain language of this lease to pay the subcontractors in full but was merely required to bond the lien or have it discharged. Again, since plaintiff admittedly paid IDI in full, it had grounds to discharge the lien under Lien Law § 4 and was not obligated to pay the subcontractors the full amounts they were due.
Plaintiff further presents a document entitled “Completion Guaranty”; however, the parties to such agreement are one Harry Macklowe and North Fork Bank. While the document appears to be a personal guaranty of a loan by North Fork to plaintiff, Macklowe, the guarantor, is not a party to this action, and thus plaintiffs reliance on this document as a basis for its payment to subcontractors is without merit. Similarly, plaintiff is not a party to the loan agreement dated July 15, 2005 between 610 Broadway Owner LLC and Nomura Credit & Capital, Inc., and neither of these entities is a party to this litigation.
Based on the foregoing, the court finds that on plaintiffs motion for summary judgment, while BHMD has not met its prima facie burden of demonstrating the absence of any material fact on the first cause of action for recovery under the Lien Law, defendant has. The submissions reflect that plaintiff, as an owner, is not a beneficiary under Lien Law article 3-A. (Lien Law § 71 [2].) Although plaintiff claims it is subrogated to the rights of the subcontractors, and thus is entitled to maintain an action in its own name, plaintiff has failed to meet its burden of demonstrating that its payments to the subcontractors, after it already fully paid IDI, were not voluntary. None of the documentary evidence submitted by plaintiff demonstrates an obligation or compulsion to pay the subcontractors in full. Rather, these mortgages, loans and leases, to the extent applicable, merely obligated plaintiff to bond or discharge any liens filed within a specified time period or hold the lender or lessor harmless from any damages arising therefrom. The court will not rewrite the plain language of these agreements to conform to plaintiffs interpretation. (Gassman v Metropolitan Life Ins. Co., 37 AD3d 526 [2d Dept 2007].) To the extent that the plaintiff made a business decision not to avail itself of the various remedies available to discharge or bond mechanic’s liens to keep the job *1011 moving, the owner knowingly assumed the risk of possible double payment. Thus, plaintiffs motion for summary judgment is denied.
Turning to defendants’ motion for summary judgment dismissing the complaint, the court finds that defendants have met their prima facie burden for the identical reasons set forth in the discussion above. Plaintiff, in opposition, failed to offer evidence to demonstrate a material issue of fact. The first and second causes of action of the complaint are based upon violation of Lien Law article 3-A. Since the court has concluded that plaintiff is neither a beneficiary, nor subrogated to the rights of the subcontractor beneficiaries, it lacks standing to maintain this action and these causes of action must be dismissed. (See Select Constr. Corp. v 502 Old Country Rd. LLC, 11 Misc 3d 1078[A], 2006 NY Slip Op 50609[U] [Sup Ct, Nassau County 2006].) Likewise, the third cause of action alleging a breach of fiduciary duty must also be dismissed. As succinctly explained by Justice Austin in Select Constr. (supra), the Lien Law fiduciary duty is created by statute and may only be asserted by the beneficiary of a trust. Since the owner is not the beneficiary of the trust, it lacks standing to interpose a cause of action for breach of fiduciary duty. (Id.) Therefore, plaintiffs third cause of action for breach of fiduciary duty must be dismissed. In view of the court’s determination that plaintiff lacks standing to assert these claims under Lien Law or for breach of fiduciary duty, the court need not reach the issue of whether the individual defendants’ pleas constitute evidence of diversion and/or conversion of specific funds relating to this particular construction project. Accordingly, plaintiffs motion for summary judgment on its first cause of action is denied. Defendants’ motion for summary judgment dismissing the complaint is granted. Plaintiffs fourth cause of action for injunctive relief, based entirely on the underlying standing to bring the first three, is dismissed in light of the determination herein.
And so, how does the court answer its initial inquiry? The defendants herein are admitted criminals, having taken money out of their corporation in abrogation of the rights of those who provided labor and materials for construction jobs. The owner of a construction project paid those laborers and materialmen; yet, it need not have done so because the law does not require such amounts to be paid twice. The owner’s lenders may have obligated the owner to discharge and/or bond any liens on the project; neither of which the owner did and legally could have *1012 done. The owner must, therefore, under the circumstances, seek what relief it can, from the Bankruptcy Court against the general contractor. It has none, equity aside, before this body.
Accordingly, plaintiffs motion for summary judgment on its first cause of action is denied. Defendants’ motion for summary judgment dismissing the complaint is granted.

. IDI is not a party to this action as it filed for bankruptcy protection in December of 2004. Plaintiff alleges in its complaint that it filed a proof of claim in the bankruptcy proceeding for $3,032,322.58.

. The court notes, that these plea agreements both state that during the period of March 12, 2003 and April 30, 2004, defendants received monies in violation of the Lien Law, with regard to a project for “Asprey Limited.” It appears from the submissions that “Asprey Limited” is not the project that was the subject of the agreement between plaintiff and IDI.