# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1088**

**CA 12-02386**

PRESENT: SMITH, J.P., PERADOTTO, VALENTINO, AND WHALEN, JJ.

---

PRICE TRUCKING CORP., FOR ITSELF AND ALL OTHER
SIMILARLY SITUATED TRUST FUND BENEFICIARIES OF
CERTAIN TRUST FUNDS PURSUANT TO NEW YORK LIEN
LAW ARTICLE 3-A, PLAINTIFF-RESPONDENT,

V                                              MEMORANDUM AND ORDER

AAA ENVIRONMENTAL, INC., ENVIRITE OF OHIO, INC.,
MIKE LINA PAVING, INC., DEFENDANTS-RESPONDENTS,
FIRST NIAGARA BANK, N.A., DEFENDANT-APPELLANT,
NORAMPAC INDUSTRIES, INC., ET AL., DEFENDANTS.

---

DAVIDSON FINK LLP, ROCHESTER (DAVID L. RASMUSSEN OF COUNSEL), FOR
DEFENDANT-APPELLANT.

ERNSTROM & DRESTE, LLP, ROCHESTER (THOMAS K. O'GARA OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered December 6, 2012. The order, among other things, granted in part the motion of plaintiff for partial summary judgment seeking, inter alia, a determination on its first cause of action that defendant First Niagara Bank, N.A. was liable for violations of Lien Law article 3-A, and a determination on its fifth cause of action that it is entitled to attorneys' fees.

It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying plaintiff's motion in its entirety and as modified the order is affirmed without costs.

Memorandum: Defendant AAA Environmental, Inc. (AAA) entered into a contract with defendant Norampac Industries, Inc. (Norampac) to perform environmental remediation services at premises owned by Norampac. AAA thereafter entered into subcontracts with various entities. Payments issued by Norampac to AAA were deposited into AAA's operational account at defendant First Niagara Bank, N.A. (First Niagara). AAA and First Niagara had an agreement (agreement) whereby each night funds from AAA's operational account would be transferred automatically into AAA's line of credit account to reduce the amounts owed by AAA on that account. Conversely, if the amount to be charged against AAA's operational account the next business day exceeded the funds available in that account, funds would be transferred automatically from the line of credit account to the operational account pursuant to the agreement. Plaintiff, on behalf of itself and

all other similarly situated subcontractors of AAA on the Norampac project, commenced this action alleging, inter alia, that First Niagara's automatic transfer of funds from the operational account into the line of credit account constituted a violation of Lien Law article 3-A.  Plaintiff subsequently moved for partial summary judgment seeking, inter alia, a determination on its first cause of action that First Niagara was liable as a matter of law for violations of Lien Law article 3-A, and a determination on its fifth cause of action that it is entitled to attorneys' fees pursuant to CPLR 909. In opposing the motion, First Niagara argued that it was a holder in due course pursuant to Lien Law § 72 (1) and that it could not be held liable because it did not have actual notice that it was receiving diverted Lien Law trust assets.  As relevant on appeal, Supreme Court granted those parts of plaintiff's motion for partial summary judgment on liability on the first and fifth causes of action, upon determining that First Niagara was a Lien Law statutory trustee, and that it had both actual and constructive notice that the automatic transfer of funds from AAA's operational account into AAA's line of credit account constituted a diversion of Lien Law trust assets.  We conclude that the court erred in granting those parts of plaintiff's motion, and we therefore modify the order accordingly.

        Contrary to the court's determination, First Niagara is not a Lien Law statutory trustee under the facts of this case and thus cannot be held liable for a violation of the Lien Law on that basis. "A lender is not a statutory trustee because '[n]o one other than an owner, contractor, or subcontractor is designated as a prospective trustee in article 3-A [of the Lien Law]' " (*Matter of ALB Contr. Co. v York-Jersey Mtge. Co.*, 60 AD2d 989, 989; *see Caledonia Lbr. & Coal Co. v Chili Hgts. Apts.*, 70 AD2d 766, 766).  Although the Court of Appeals has held that a lender may become a statutory trustee when a contractor assigns its right of payment from the owner to the lender as security for a loan and the owner makes payments directly to the lender until the contractor's debt is repaid (*see Aspro Mech. Contr. v Fleet Bank*, 1 NY3d 324, 330, *rearg denied* 2 NY3d 760), First Niagara received no such assignment here.  Contrary to plaintiff's contention, our decision in *Local No. 4, Intl. Assn. of Heat & Frost & Asbestos Workers v Buffalo Wholesale Supply Co., Inc.* (49 AD3d 1276) does not compel a different result.  In that case, we did not determine that all lenders that come into possession of trust assets are statutory trustees per se; rather, we wrote in the procedural posture of a motion to dismiss the complaint for failure to state a cause of action that a lender "may be held liable for diverting [trust] assets" under that theory (*id.* at 1278), in accordance with the decision of the Court of Appeals in *Aspro* (*see* 1 NY3d at 330).

        We further agree with First Niagara that the court erred in determining as a matter of law that it had actual notice that it was receiving diverted Lien Law trust funds, and thus could be held liable under Lien Law § 72 (1).  Plaintiff's own submissions raise issues of fact whether First Niagara had actual notice, and thus we need not consider the sufficiency of First Niagara's opposing papers (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324).

We also agree with First Niagara that the court erred in applying a constructive notice standard in determining that First Niagara was not a holder in due course, and thus could be liable under Lien Law § 72 (1). As the Court of Appeals noted in *I-T-E Imperial Corp.—Empire Div. v Bankers Trust Co.* (51 NY2d 811), "[w]ith the adoption . . . of the Uniform Commercial Code, the concept of notice under [UCC] article 3 (and by analogy under article 4 as well . . . ) has, as we have held in *Chemical Bank of Rochester v Haskell* (51 NY2d 85), been changed from an objective to a subjective standard, and that change must be deemed to have amended the Lien Law as well" (*id.* at 813-814; *see LeChase Data/Telecom Servs., LLC v Goebert*, 6 NY3d 281, 291-292). Furthermore, "[t]he purpose of UCC 3-304 (7)—unique to New York and Virginia—[is] to require that questions of notice . . . be determined by a subjective test of actual knowledge rather than an objective test which might involve constructive knowledge" (*Hartford Acc. & Indem. Co. v American Express Co.*, 74 NY2d 153, 162).

Contrary to plaintiff's contention, *LeChase* does not require the application of a constructive notice standard here. The lender in *LeChase* was not a bank but instead was a factor, i.e., a company that lends money on the security of accounts receivable (*see* 6 NY3d at 284-285). The Court of Appeals held that the factor in that case acknowledged by filing a UCC-1 financing statement that its factoring arrangement was a UCC article 9 financing transaction and thus the factor was subject to the constructive notice standard supplied by UCC 1-201 (25) (*see id.* at 284, 292). In distinguishing its holding in *I-T-E*, the Court reiterated that "[a] holder in due course such as the bank in *I-T-E* will have customarily accepted trust assets in the form of an endorsed check, and cannot evaluate the trust status of every check deposited by all its contractor or construction-related customers" (*id.* at 292). Here, First Niagara was not a factor, nor was it an assignee of AAA's accounts receivable, and there is no evidence in the record that First Niagara filed a UCC-1 financing statement or that the relationship between First Niagara and AAA was otherwise governed by UCC article 9 (*cf. id.* at 292). We therefore conclude that First Niagara is subject "to the 'concept of notice' in articles 3 and 4 of the Uniform Commercial Code, which govern commercial paper and bank deposits and collections respectively" (*id.* at 291), i.e., actual notice. Thus, only actual notice that it was receiving diverted Lien Law trust funds would preclude First Niagara from relying on the holder in due course defense provided by Lien Law § 72 (1) and subject it to liability under the statute (*see id.* at 291-292; *I-T-E Imperial Corp.—Empire Div.*, 51 NY2d at 813-814).

Entered: November 8, 2013

Frances E. Cafarell
Clerk of the Court