L.C. Whitford Co., Inc. v Babcock & Wilcox Solar Energy, Inc. (2025 NY Slip Op 07063)

L.C. Whitford Co., Inc. v Babcock & Wilcox Solar Energy, Inc.

2025 NY Slip Op 07063

Decided on December 18, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 18, 2025

CV-24-2057
[*1]L.C. Whitford Co., Inc., et al., Respondents,
vBabcock & Wilcox Solar Energy, Inc., Formerly Known as Fosler Construction Company, Inc., et al., Appellants, et al., Defendants.

Calendar Date:October 7, 2025

Before:Garry, P.J., Lynch, Ceresia, Fisher and Mackey, JJ.

Bond, Schoeneck & King PLLC, Rochester (Gregory J. McDonald of counsel), for appellants.
Duke Holzman Photiadis & Ritter LLP, Buffalo (Steven W. Klutkowski of counsel), for respondents.

Lynch, J.
Appeal from an order of the Supreme Court (Mary Farley, J.), entered November 19, 2024 in St. Lawrence County, which granted plaintiffs' motion for a preliminary injunction.
This dispute pertains to funds derived from a settlement between defendant Babcock & Wilcox Solar Energy, Inc. (hereinafter BWS), as general contractor, and the project owners with respect to the construction of multiple solar photovoltaic electric power facilities in St. Lawrence County. Plaintiffs performed work as subcontractors on the projects. Pursuant to the terms of an October 15, 2024 "Confidential Settlement Agreement and Release," BWS and the project owners agreed to resolve disputes over a variety of issues, including project delays, through the payment to BWS of $4,978,477. That sum included the direct payment of $1,264,470 to BWS with respect to the termination of the three projects at issue here: 409 Ferris Road Project, 641 Ferris Road East Project and 641 Ferris Road West Project. In return, BWS agreed to indemnify the project owners with respect to any liens filed by subcontractors on the projects — which includes the liens filed by plaintiffs. After receiving notice from BWS that it intended to use the settlement funds "to reimburse itself for the payment of the costs of the improvements that it advanced and paid to subcontractors, suppliers and laborers on each of the Ferris Projects," plaintiffs commenced this action under Lien Law § 77 to enforce the trust, contending that BWS's proposal to reimburse itself would be an improper diversion of trust assets (see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor, 97 NY2d 256, 263 [2002]). Pertinent here, the parties continue to litigate the validity of plaintiffs' liens in a separate action in which plaintiffs are seeking $6,910,317 for labor and materials provided on the projects. Supreme Court granted plaintiffs' application for an injunction prohibiting BWS from dispersing the settlement funds without a further court order and also required plaintiffs to post an undertaking of $50,000. BWS appeals.
We affirm. "Article 3-A of the Lien Law impresses with a trust any funds paid or payable to a contractor 'under or in connection with a contract for an improvement of real property' " (LeChase Data/Telecom Servs., LLC v Goebert, 6 NY3d 281, 289 [2006], quoting Lien Law § 70 [1]). Given this statutory definition, we readily conclude that the settlement funds at issue constitute trust funds under Lien Law article 3-A (see Lien Law § 70 [1], [6]). The Court of Appeals has "repeatedly recognized that the primary purpose of [Lien Law] article 3-A . . . is to ensure that those who have directly expended labor and materials to improve real property . . . at the direction of the owner or a general contractor receive payment for the work actually performed" (Aspro Mech. Contr. v Fleet Bank, 1 NY3d 324, 328 [2004] [internal quotation marks, brackets and citations omitted]). With respect to a contractor's trust[*2], the parties entitled to a beneficial status are expressly enumerated in Lien Law § 71 (2) (a)-(f) (see Harmon v Fairview Assoc., 25 NY2d 101, 105 [1969]). Pursuant to Lien Law § 71 (2) (a), "[t]he trust assets of which a contractor . . . is trustee shall be held and applied for [enumerated] expenditures arising out of the improvement of real property," including "payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen" (Lien Law § 71 [2] [a] [emphasis added]). The language is mandatory and does not include the "cost[s] of improvement," which is a term specifically defined to address an owner's costs (Lien Law § 2 [5]; see Lien §§ 70 [5]; 71 [1]; Aspro Mech. Contr. v Fleet Bank, 1 NY3d at 328-329).
As noted above, BWS informed plaintiffs that it intended to reimburse itself for "the costs of the improvements." While a trustee owner may have authority to do so, the Lien Law accords no such authority for a contractor trustee. To the contrary, a "contractor-trustee holds the trust assets in a fiduciary capacity akin to that of the trustee of an express trust and thus, does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid. Consistent with these fiduciary obligations, the contractor is statutorily prohibited from applying trust assets to his personal debts to the detriment of valid trust claims" (Canron Corp. v City of New York,89 NY2d 147, 157-158 [1996] [internal quotation marks, citations and emphasis omitted]). In short, BWS has no authority to reimburse itself with the settlement funds for moneys advanced on the project and doing so would be a breach of its fiduciary duties as a trustee. As such, Supreme Court duly exercised its discretion by enjoining BWS from utilizing the funds pending further court approval (see Lien Law § 77 [3] [a]).
Garry, P.J., and Ceresia, J., concur.
Mackey, J. (dissenting).
We respectfully dissent. We agree with the majority that the settlement funds at issue here are trust funds subject to the limitations of Lien Law article 3-A (see Lien Law § 70 [1]-[2]) and, thus, that the issue to be decided is whether a trustee can apply subsequently received trust assets to reimburse earlier payments that were initially made with nontrust funds toward proper trust purposes. However, contrary to the majority, we would answer this question of first impression in the affirmative and reverse Supreme Court's order. In our view, the majority reads the Lien Law too narrowly, resulting in a ruling that is both inconsistent with the statutory language and contrary to the spirit of the law.
It is undisputed that defendant Babcock & Wilcox Solar Energy, Inc. (hereinafter BWS) made various payments to plaintiff subcontractors for their work and services on the subject projects[*3], and that it sometimes did so using its own funds when trust assets had been depleted. Ultimately, BWS paid the subcontractors millions of dollars more than the funds it received from the owners for the subject projects. Upon the subsequent receipt of the settlement funds, BWS expressed its intention of using those trust assets to partially reimburse itself for payments it had advanced to the subcontractors. Contrary to the majority's suggestion, nothing in the record supports finding that BWS sought to impermissibly apply the settlement funds received toward its own personal debts (compare Canron Corp. v City of New York,89 NY2d 147, 157-158 [1996]). Rather, it is undisputed that BWS used its own funds to pay the subcontractors, essentially "loaning" money to the owners who — as evidenced by the owners' settlement with BWS — failed to provide timely funding for the projects.
The majority fails to address the fact that nothing in the Lien Law provides that the timing of the receipt of trust assets is determinative as to whether a trustee's disbursement thereof was permissible; rather, the critical question is whether the assets were applied toward a proper purpose. To this end, the statute expressly provides that "trust assets of which a contractor . . . is trustee shall be held and applied for . . . expenditures arising out of the improvement of real property," including the "payment of claims of subcontractors," and nothing under the statute prohibits the use of trust assets to reimburse payments made for proper trust purposes before trust assets were made available (Lien Law § 71 [2]). Accordingly, we would find that the payments advanced by BWS to the subcontractors for services rendered unto the subject projects unquestionably constitutes a proper use of trust assets under the Lien Law and, as such, that BWS may be reimbursed for its payment thereof from trust assets that are subsequently received (see Lien Law § 71 [1], [2]).
This approach is consistent with the Lien Law's well established remedial purpose of "ensur[ing] that those who have directly expended labor and materials to improve real property or a public improvement at the direction of the owner or a general contractor receive payment for the work actually performed" (LeChase Data/Telecom Servs., LLC v Goebert, 6 NY3d 281, 289 [2006] [internal quotation marks, brackets and citations omitted]; see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor, 97 NY2d 256, 263-264 [2002]; Canron Corp. v City of New York, 89 NY2d at 153-154). The Lien Law's protective purpose is not furthered by penalizing a general contractor who advances payment to subcontractors in excess of then-existing trust assets by prohibiting the reimbursement thereof from later received trust funds. To hold the contrary, as does the majority, serves only to discourage general contractors from ever using their own funds to timely pay subcontractors, instead incentivizing them to delay such payments until [*4]the receipt of funds from owners, which may be delayed or, as occurred here, never fully received. We agree with the majority that the primary purpose of Lien Law article 3-A is to ensure the timely payment of those who have expended labor and materials to improve real property. As such, it is our view that a rule that essentially penalizes a general contractor for advancing its own funds to make those payments when trust funds have been depleted would have the exact opposite effect and is contrary to both the intent and, we believe, the wording of the Lien Law.
Fisher, J., concurs.
ORDERED that the order is affirmed, with costs.