**CONNECTICUT FIRE INSURANCE COMPANY, a corporation, and General Adjustment Bureau, Inc., a corporation, Appellants,**

v.

**A. H. FOX and Edith Fox, dba Firebird Motor Hotel, Appellees.**

**No. 8163.**

United States Court of Appeals
Tenth Circuit.

May 26, 1966.

2

Brooke Wunnicke and T. A. Fennell, of Williams, Wunnicke & Fennell, Cheyenne, Wyo., for appellants.

Louis A. Mankus, Cheyenne, Wyo., for appellees.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This is a suit against Connecticut Fire Insurance Company to recover on a fire insurance contract and also against General Adjustment Bureau, Inc. (hereafter called G.A.B.) and the above named insurer for negligence in adjusting the loss. The jury returned a verdict of $92,000 for the plaintiff against both defendants and this appeal was taken.

The appellant insurance company admits the fire insurance policy was issued to the appellees and that it was in effect on March 25, 1964, when the fire occurred. Its defense, very simply, is that the appellees caused the fire and that they failed to file a timely proof of loss. The jury, however, by its interrogatories specifically found that the appellees did not cause the fire and that the time for filing the proof of loss was extended by the agents of G.A.B. with the insurer's approval.

By their appeal, appellants assert that the proof of loss was untimely as a matter of law, that the trial court's instructions on their burden of proof to show arson were erroneous, that there was no evidence of negligence against G.A.B. to justify liability against it, and finally that the verdict forms were defective because the jury could not exonerate either defendant although one defendant was sued in contract and the other in tort for negligence.

Insofar as G.A.B. is concerned, we agree with appellants that there is no evidence of negligence upon which to predicate liability against it. In fact, the trial court gave no instruction to the jury upon G.A.B.'s negligence and appellee now in argument concedes this point. Clearly then, that part of the verdict against G.A.B. must be set aside. It is

true as appellants point out, the trial court submitted joint verdict forms to the jury. However, due to the lack of any evidence of negligence against G.A.B. or any instructions thereon, it is clear the jury could only impose liability on the insurer under the insurance contract. The error was harmless as to the insurer and must be so considered under the mandate of Rule 61. In any event, the time for appellants to complain of the verdict form was at the trial, not now for the first time on appeal.[1]

The facts surrounding the fire and the events thereafter are not in serious dispute. Appellees A. H. Fox and Edith Fox are the sole proprietors of the Firebird Motor Hotel in Cheyenne, Wyoming. In the early morning hours of March 25th, 1964, a substantial portion of the motel was either destroyed or damaged by fire. There seems to be no doubt that the fire was the result of arson although no one has been prosecuted for that crime.

The evidence clearly shows that the insurer, Connecticut Fire Insurance Company, was aware of the fire within a few hours after it occurred. The local agent for the company who sold the policy, Sanford Griffin, testified he was so informed by the insurance commissioner's office. Griffin then immediately notified the district office in Denver where he was advised that they were already aware of the matter and had referred the case to G.A.B. for adjustment. Mr. Fox said he also notified Mr. Griffin on the morning of the fire but Griffin said Fox did not. According to Griffin, he and two agent adjusters of G.A.B. drove out to the motel during the morning after the fire and inspected the damage. Harold Ingebretsen, who was district manager for an insurance group in Denver which included the insurer company, also drove to Cheyenne, to observe the damage on March 26th.

According to Fox, whose testimony was largely corroborated by his wife, on the

1. The appellants did make an objection to the verdict form but only that as submitted it didn't provide for an allocation of damages to the various categories of liability under the policy.

same morning of the fire, two agents of G.A.B., named McMaster and Barnes, arrived at the motel and informed them they represented G.A.B. The adjusters then asked the Foxes to sign a "non-waiver" agreement which they declined to do. On the next day, March 26th, a Mr. Foster appeared on the scene who was destined to thereafter play a key role in the events to follow. Foster was an adjuster for G.A.B. who specialized in significant fire losses and, according to McMaster, Foster came to Cheyenne to take charge of the adjustment. Where the other adjusters had failed, Foster persuaded the Foxes to sign the non-waiver agreement on March 26th even though their attorney apparently advised against it. The non-waiver agreement, set forth in detail below [2] essentially provided that no action of the insurer in investigating the loss would waive any conditions of the policy and that no representative of the company has any authority to waive any conditions of the policy unless such waiver be in writing.

In addition to obtaining signatures on the non-waiver agreement, Foster took a statement about the fire and explained the necessary procedures to be followed in order to recover on the policy, although apparently he said nothing about the proof of loss requirement. Foster also told the Foxes to winterize and secure the property that was still useable and to make available the remaining units of the motel that were not damaged and to continue in business with those units. Foster supplied the Foxes with inventory sheets with instructions to itemize the contents of the motel that were damaged. According to Mrs. Fox, Foster also told them to keep a file on everything that was done including the expenses for cleaning up the property, and that it would be included in the settlement. Also on March 26th, Agent McMaster of G.A.B. took a narrative statement and filled out a proof of loss for a guest at the motel and $100 was paid her by the insurer for damages to her property under an extension of coverage provision of the policy.[3]

2.

"Non-Waiver Agreement

"It Is Agreed that any action taken by the insurance company, or companies, signing this agreement in ascertaining the amount of the actual cash value; and the amount of the loss and damage which occurred March 25, 1964, to Motel (Property) located at 1905 East Lincolnway (Street Address), Cheyenne (City), Wyo. (State) and in investigating the cause thereof, shall not waive or invalidate any of the conditions of the policies of insurance, and shall not waive or invalidate any rights whatever of any party to this agreement.

"Notice, is hereby given and accepted, and it is hereby mutually understood and agreed, that no representative of any insurance company signing this agreement has power or authority to waive any of the conditions of their respective policies, unless such waiver be specifically made in writing.

"The Sole Object And Intent of this agreement is to provide for the determination of the amount of the actual cash value and the amount of the loss and damage, and an investigation of the cause thereof, without regard to the liability of said insurance companies, and to preserve all the rights of the insurance company, or companies, and the insured.

"Witness our hands in duplicate, this 26 day of March, 1964.

| Insured | Insurance Company, Or Companies |
|---|---|
| A. H. Fox | Connecticut Fire Ins. Co. |
| Edith Fox | P. C. Foster, General Adjuster |
| Witness: Ora M. Walker | General Adjustment Bureau." |

---

3. "This policy includes the following incidental coverages:
 "B. Personal Effects: At the option of the Named Insured $100 on property of each registered guest while such property is either in the rental unit occupied by such registered guest or while in the care, custody and

On the night of March 26th, Mr. Fox was taken to the hospital with a heart attack and remained there until April 7th. During that time, Mr. Griffin, sales agent for the insurer, assisted Mrs. Fox in preparing an inventory of the damaged contents. When Mr. Fox returned from the hospital, he completed this inventory by filling in the value of the damaged property. The next meeting of the parties involved was on May 5th when Mr. Foster returned to the motel. According to Mr. Fox, he then presented Foster with a complete inventory of losses including an estimated dollar value and also gave Foster some bids made by various companies to clean up the damage. Foster testified that Fox then presented an estimate of about $96,000 from the Rogers Construction Company to rebuild the damaged units but he rejected this because it was a lump sum bid and not in detail. Foster also recalled the inventory forms were not as he requested and at this time a dispute arose between him and Fox over what value or price to use for the damaged property.

On May 12, Mr. Wyatt from the Underwriters Salvage Company and Mr. Richman from a furniture company visited the Foxes at the motel stating they were sent by G.A.B. Wyatt apparently came to verify the inventory made by the Foxes which he did with Mr. Fox's help. According to Fox, Wyatt found no discrepancies in the inventory and in fact found it most complete. On May 15th Mr. Foster accompanied by Mr. Hammond of the Hammond Construction Company, visited the motel. They spent several hours measuring and sketching the burned units of the property and then departed. Apparently no discussion of loss occurred on this visit.

The next meeting and the one most significant was on June 3rd. Present at this meeting were the Foxes, Foster, Griffin and Agents McMaster and Perry of G.A.B. Foster accused Mr. Fox of not complying with the policy in substantiating the losses. Foster then presented a bid by the Hammond Construction Company to repair the property as opposed to rebuilding it. According to Mrs. Fox, she and her husband then indicated they would be satisfied with that providing Hammond could get them rebuilt before the tourist season. Mr. Fox however appeared a little worried for fear Hammond couldn't do the job properly for that figure and inquired about a completion bond. Mrs. Fox did testify that Foster wanted them to accept that money in settlement. But, they did not. It was at this time that Foster handed Fox a letter with a blank proof of loss form attached and told him he was extending the proof of loss to July 3rd. The letter set forth the policy requirements in the event of loss [4] and pointed out that although the sixty days for filing the proof of loss had expired, if the proof of loss was filed before July 3rd, no objection would be made. The letter concluded that it was not an admission of liability nor a waiver of any conditions other than the extended time for filing a proof of loss. It was signed: Connecticut Fire Insurance Company, By G.A.B. per P. C. Foster, General Adjuster. According to Fox, he then told Foster he would fill out the proof of loss immediately; that he wasn't aware

---

control of the Insured, subject to an aggregate limit of $500 in any one occurrence. This extension does not apply if the loss is covered by any other insurance, whether collectible or not, or would have been covered by such other insurance in the absence of this policy."

4. The part here pertinent provided:
 "Requirements In Case Loss Occurs. The insured shall give immediate notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, cost, actual cash value and amount of loss claimed; *and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, * * *.*"

he had to do so before because in the past an adjuster had always done it.

The Foxes did complete the proof of loss and together with the inventories sent them to the insurer on June 6th. On about June 8th, two attorneys representing the insurer went to see the Foxes and told them everything would be okay and that they would get the whole matter settled as quickly as possible. Fox, however, heard nothing from anyone and on July 7th instituted this suit. The insurer rejected the proof of loss thirty days thereafter.

Both Mr. and Mrs. Fox related that in their past experience, an adjuster had always filled out a proof of loss and McMaster of G.A.B. candidly admitted that usually the adjuster does fill out the proof of loss just as he did for the motel guest. Mr. Perry, who was regional manager of G.A.B. and technically Foster's superior, stated he was aware Foster was extending the time for filing the proof of loss and that he in fact helped Foster draft the letter, which they gave to Fox. Further he stated that adjusters get their instructions from the insurance company, although Foster testified unequivocally that no one authorized him to extend the time for filing the proof of loss or to settle the claim.

 The first error appellants assert concerns the court's instruction on the burden of proof for the defense of arson. The instruction complained of states that, "The defendants must prove by a preponderance of evidence the defense that the plaintiffs burned the property or caused it to be burned. Such proof may be made by circumstantial evidence, but, when so made, it must be clear and convincing." While appellant insurer concedes, and we believe correctly so, that the correct standard is by a preponderance of the evidence,[5] it urges that the additional words "clear and convincing" placed a greater burden on it than the law requires. We disagree. The words clear and convincing or clear and satisfactory are often used as the standard of proof in such an instruction and can hardly be considered a larger burden than preponderance of the evidence.[6] In any event, prior to the instruction complained of the court told the jury that the proof on the issue must be by a preponderance of the evidence. Additionally, in submitting the interrogatories to the jury, the court again stated only that the proof need be by a preponderance of the evidence. Instructions must be considered as a whole and not piecemeal.[7] After reading the entire instructions, we are satisfied the jury was properly instructed on this issue.

 It is undisputed that the Foxes did not file their proofs of loss within sixty days after the fire as required by the policy. As a general rule, a proof of loss requirement is valid and may be considered as a condition precedent to recovery.[8] However, this technical policy requirement may be waived by the insurer either directly or through the acts of its agents.[9] The question to decide is whether under the facts and circumstances of this case, the insurer is deemed

5. See Buffalo Insurance Company v. Amyx, 10th Cir., 262 F.2d 898; and see generally Vol. 29A, Am.Jur., Insurance, § 1928.

6. In Carpenter v. Union Ins. Society of Canton, Ltd., 4th Cir., 284 F.2d 155, the court said:

"This is fully in accord with the general principle that the burden of proof of an act of a criminal nature asserted as a defense in a civil action is somewhere in between the standard requirement of proof beyond a reasonable doubt in a criminal case and the preponderance of evidence requirement in the ordinary civil case. The proper test is that such defense be established by clear and convincing proof; that it be shown by 'clear and satisfactory evidence to a reasonable certainty.'"

7. Walker v. Dean, 10th Cir., 333 F.2d 753; Riley v. Layton, 10th Cir., 329 F.2d 53.

8. See Couch on Insurance (Second), Vol. 14, § 49.482.

9. Couch, supra, § 49.753. See also Nebraska Drillers v. Westchester Fire Ins. Co., D.C., 123 F.Supp. 678, and the cases collected therein on this point.

to have waived the proof of loss requirement.

Appellants' main contention is that the non-waiver agreement signed by the insured precludes a waiver by the insurer or its agents of a proof of loss requirement. Although we can find no Wyoming law directly in point, there can be no doubt of the validity of insurance non-waiver agreements, which, despite investigation into a claim by an insurer, nevertheless maintains the status quo of the policy and its conditions precedent to recovery. Had the insurer here through its adjusters done no more than investigate the fire loss, we would be loathe to say in light of the non-waiver agreement that this effectively waived the proof of loss requirement. But more was done than a mere investigation.

Non-waiver agreements are not so sacrosanct that they immunize an insurer from responsibility for any and all actions taken in adjusting a loss. The agreement being solely for the benefit of the insurer must be strictly construed against it under sound contract principles. In this case, the agreement merely allows the insurer to investigate to determine the cause and the amount of loss. The actions of the adjusters however went far beyond a mere investigation and to us cannot be considered protected under the non-waiver agreement.[10] Nor can it be seriously doubted that the adjusters here, and particularly Foster, had the power to waive requirements of the policy like those under consideration.[11]

At the first meeting, Agent Foster explained to the Foxes the conditions of the policy and their responsibility thereunder, but no mention was made of the proofs of loss. Foster did furnish inventory forms to be completed and submitted to the insurer and the accuracy and correctness of the forms thereafter seemed to be a main source of difficulty between the parties. No indication was ever made by Foster that proofs of loss were also required. On May 5th, when the Foxes had prepared these inventory forms, Foster rejected them as unsatisfactory. Fox submitted a bid to Foster at the May 5th meeting to completely rebuild the property but it was rejected for lack of detail. On May 12th, G.A.B. sent Mr. Wyatt of Underwriters Salvage Company to the motel to verify the inventory, which he did with Mr. Fox's assistance. Under the circumstances, Fox had a right to believe that once the inventory forms and bids were satisfactorily completed no further action on his part was necessary to perfect the claim. The cases are legion to the effect that once the insurer or its authorized agents indicate by a course of conduct that proofs of loss are unnecessary, such a requirement is waived.[12] But Foster even went further. In taking complete charge of the loss, he instructed the Foxes to secure the property, to winterize the motel and to have the area cleaned and the remaining undamaged units made available for business, all of which was done. According to Mrs. Fox, Foster told them to keep a file on all these expenses and it would be included in settlement. Clearly by all these acts, Foster went beyond a mere investigation of the fire. It is no surprise in light of his apparent authority that the Foxes relied upon Foster to know what they must do to recover their loss.

One other factor certainly bears mentioning. The insurer actually paid a claim under the policy to a motel guest. Agent McMaster of G.A.B. in fact completed the proof of loss for the guest and the company paid $100. Having prepared a proof of loss and assumed lia-

10. See Springfield Fire & Marine Ins. Co. v. Fine, 90 Okl. 101, 216 P. 898; Vol. 29A Am.Jur., Insurance, § 1044; and Couch on Insurance (Second), Vol. 4, § 26.328 at p. 269.

11. Firemen's Insurance Co. v. Brooks, 6th Cir., 32 F.2d 451, 65 A.L.R. 909; Kahn v. Traders' Ins. Co., 4 Wyo. 419, 34 P. 1059; Couch, supra, Vol. 4, § 26.320.

12. See Hartford Fire Insurance Co. v. Kiser, 4th Cir., 64 F.2d 288, and the cases cited in Couch on Insurance (Second), Vol. 14, § 49.767; Am.Jur., Insurance, Vol. 29A, § 1426.

bility for a guest in that instance under the policy, it seems rather astonishing that the insurer should now insist on proof of loss from the motel owner. As the final indication of the insurer's intention to waive the proof of loss requirement, appellee points to the letter of June 3rd, which waived the time for filing the proof of loss. The appellant insurer; while acknowledging this letter, contends that Foster had no authority to do so and, even if he did, the time for filing the proofs had already expired when the letter was given on June 3rd and that a waiver cannot be effectuated after the time for filing proofs of loss had expired. While there is some authority to that effect,[13] we believe the other rule should prevail under the facts here and allow the insurer to waive or extend the requirement even though the original time requirement had expired.[14] The contention that Foster lacked authority to make the waiver is not persuasive particularly in light of the company's reliance on the earlier non-waiver agreement which was also signed by Foster in behalf of the insurer.[15] At any rate, had the insurer been dissatisfied with the waiver or extension for filing the proofs, the time for repudiating it would have been when the proofs were received on June 6th, not two months later after suit had been filed. In answer to an interrogatory, the jury expressly found that the agents of G.A.B., and specifically Foster, did have authority to extend the time for filing the proofs of loss. We are satisfied that finding is supported by substantial evidence and must therefore be affirmed.

One additional matter must be decided before finally disposing of the case. The appellee urges us to assess a ten per cent penalty against the appellant under Rule 25 of this court. The rule

permits such penalty where the appeal appears to have been sought out merely for delay. It is clear in light of the issues decided coupled with our reversing the verdict against G.A.B. that much more was at stake for appellants than mere delay. No penalty will be imposed.

The judgment of the trial court is reversed as to appellant, General Adjustment Bureau, Inc., and affirmed as to appellant, Connecticut Fire Insurance Company.

13. See the cases cited in Couch, supra, Vol. 14, § 49.757.

14. See Federal Life Ins. Co. v. Wells, 98 Colo. 455, 56 P.2d 936, and generally Vol. 45 C.J.S. Insurance § 982(6) (a).

15. Couch, supra, Vol. 4, § 26.327 where it is said: " * * * where an insurer

adopts as its act a 'non-waiver agreement' relating to an adjustment of a loss and signed by its agent, it cannot repudiate other acts of the agent in line of an adjustment."