08-1425-cv
Interworks Sys. Inc. v. Merchant Fin. Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued : June 3, 2009                    Decided:  May 14, 2010)

Docket No. 08-1425-cv

-------------------------------------

INTERWORKS SYSTEMS INC., Debtor and Debtor-In-Possession,
Individually and as Trustee for all Trust Beneficiaries under
Article 3-A of the New York Lien Law,

Plaintiff,

UNITED STATES OF AMERICA,

Intervenor-Plaintiff-Appellant,

- v -

MERCHANT FINANCIAL CORPORATION,

Defendant-Cross-Defendant-Appellee,

COLONIAL SURETY COMPANY,

Cross-Claimant-Appellee.

-------------------------------------

Before:   McLAUGHLIN, CALABRESI, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Nina Gershon, Judge). The court dismissed a complaint-in-intervention by the United States seeking unpaid employment taxes from the defendant, Merchant Financial Corporation, under New York Lien Law §§ 70-79a, customarily referred to as "Article 3-A," on the ground that the United States had not complied with, and was not excused from

compliance with, two procedural requirements provided by Article 3-A. We conclude that at least the first of these procedural requirements, that there be no prior pending Article 3-A action, applies to the United States when it brings an action under Article 3-A. We therefore need not and do not address the other Article 3-A requirement.

Affirmed.

ANDREA R. TEBBETS (Kenneth W. Rosenberg, Attorney, Tax Division, Department of Justice, Benton J. Campbell, United States Attorney, Eastern District of New York, of counsel), for Nathan J. Hochman, Assistant Attorney General, Tax Division, Department of Justice, Washington, DC, for Intervenor-Plaintiff-Appellant.

TAB ROSENFELD, Rosenfeld & Kaplan, New York, NY, for Defendant-Cross-Defendant-Appellee.

ROBERT W. McCANN (Richard J. Allen, Jr., of counsel) Klotz & McCann, New York, NY, for Cross-Claimant-Appellee.

SACK, Circuit Judge:

The United States appeals from a January 30, 2008, judgment of the United States District Court for the Eastern District of New York (Nina Gershon, Judge). The district court dismissed the United States' complaint-in-intervention in an action brought by Interworks Systems, Inc. ("Interworks") against Merchant Financial Corporation ("Merchant"). The underlying action by Interworks, originally filed in the Southern District of New York and later transferred to the Eastern District of New York, sought to recover funds that Merchant had allegedly

2

diverted in violation of New York Lien Law §§ 70-79a ("Article 3-A").  In the complaint-in-intervention, the United States alleged that Merchant, through its first priority lien on all of Interworks' accounts receivable, had received and improperly diverted Article 3-A trust funds that had been paid to Interworks pursuant to certain public works contracts, and was therefore liable to the United States for Interworks' unpaid federal employment taxes related to work stemming from those contracts.

The district court dismissed the complaint-in-intervention on the ground that the government had not complied with, and was not excused from compliance with, two separate procedural requirements for bringing an action under Article 3-A: (1) that there be no prior pending Article 3-A action, and (2) that the Article 3-A suit be brought in a representative capacity on behalf of all other beneficiaries of the Article 3-A trust. Interworks Sys., Inc. v. Merchant Fin. Corp., 531 F. Supp. 2d 478, 482 (E.D.N.Y. 2008).  On appeal, the government does not dispute that it failed to meet these requirements.  It argues instead that Article 3-A's procedural requirements do not apply to the United States and that, even if they did, the United States' power to enforce federal tax law in federal court either excuses it from compliance with or preempts these requirements.

We agree with the district court that where the United States brings an action pursuant to Article 3-A, it is bound by Article 3-A's procedural requirement that there be no prior pending action.  Inasmuch as this conclusion provides a

3

sufficient basis for us to affirm the judgment of the district court, we do not reach the question of whether the United States should be excused from compliance or allowed to amend its complaint so as to allege compliance with Article 3-A's representative capacity requirement.

**BACKGROUND**

This case arises out of several public-works improvement contracts entered into by Interworks, a New York corporation in the business of selling, installing, and servicing private telephone switchboard systems and large voice/data structured cabling systems, to provide data and cabling services to customers in the greater New York metropolitan area, and the relationship of those contracts to New York Lien Law §§ 70-79a, generally known as "Article 3-A." The dispute in this case does not concern the rights of any of the direct parties to the data and cabling contracts themselves. Instead, at issue here are the rights of three other parties: (1) Colonial Surety Company ("Colonial"), the company that acted as a surety for Interworks in the data and cabling contracts; (2) Merchant, the company that provided financing to Interworks in relation to the data and cabling, as well as other, contracts; and (3) the United States government, which alleges an interest in unpaid employment taxes stemming from the data and cabling contracts. It is the respective rights of these three parties under Article 3-A that we are faced with here.

<u>Article 3-A</u>

4

Article 3-A is a New York State statute designed to protect subcontractors, tax collectors, and parties who expend labor or extend financing in construction projects, by impressing with a trust any funds paid to a contractor or received by an owner in connection with an improvement of real property in the state. See Aspro Mech. Contracting, Inc. v. Fleet Bank, N.A., 1 N.Y.3d 324, 328, 805 N.E.2d 1037, 1039, 773 N.Y.S.2d 735, 737 (2004) ("Article 3-A of the Lien Law creates trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, laborers, as well as specified taxes and expenses of construction.") (internal citations and quotation marks omitted); LeChase Data/Telecom Servs., LLC v. Goebert, 6 N.Y.3d 281, 289, 844 N.E.2d 771, 776, 811 N.Y.S.2d 317, 322 (2006) ("[T]he primary purpose of article 3-A and its predecessors is to ensure that those who have directly expended labor and materials to improve real property or a public improvement at the direction of the owner or a general contractor receive payment for the work actually performed") (internal citation and quotation marks omitted, alterations incorporated).

An Article 3-A trust arises automatically by operation of law when fees are paid to the contractor or received by the owner in connection with an improvement of real property. N.Y. Lien Law § 71.5. Until all trust fund beneficiaries have been satisfied, it is an unlawful diversion of trust fund assets for the contractor or owner to use any of the trust fund assets for

5

any purpose other than satisfying the claims of beneficiaries. See id. § 72.1; LeChase, 6 N.Y.3d at 289. If the contractor or owner unlawfully diverts the trust assets before a trust beneficiary is satisfied, that beneficiary may recover the trust assets from anyone who has received the assets with knowledge of their trust status. See N.Y. Lien Law §§ 77.1, 77.3(6); LeChase, 6 N.Y.3d at 289. The beneficiaries of the trust may be, among others, subcontractors, architects, engineers, surveyors, laborers, materialmen, tax authorities, and persons providing surety bonds. N.Y. Lien Law § 71.2.

It is undisputed that the funds paid to Interworks in connection with the public improvement contracts for data and cabling services at issue in this case were Article 3-A trust assets.

### The Financing and Surety Contracts

Interworks entered into two related contracts in connection with the data and cabling services contracts that provide the basis for the underlying lawsuit in this case: One provided for financing of the data and cabling services contracts, and one provided a surety should Interworks prove unable to perform its obligations under those contracts.

In order to obtain financing, Interworks entered into a security agreement with Merchant on February 23, 2001 under the terms of which Merchant promised to lend Interworks money[1] in

---

[1] Merchant agreed to loan or advance to Interworks the lesser of (1) $4,000,000 or (2) the sum of 80 percent of

return for a first priority lien on substantially all of Interworks' personal property, including all accounts receivables. As a result, all instruments representing payments under the data and cabling contracts were made out to Interworks but sent directly to Merchant. Interworks alleges that Merchant received at least $1,000,000 in its capacity as a lien holder over its accounts receivable.

New York law generally requires a contractor like Interworks to enter into a surety agreement to ensure completion of its contracts. See Titan Indem. Co. v. Triborough Bridge and Tunnel Auth., Inc., 135 F.3d 831, 834 (2d Cir. 1998). To meet this obligation, Interworks contracted with Colonial to act as a surety on its public improvement contracts, pursuant to which Colonial would issue performance and payment bonds for the public improvement contracts.

### The United States' Interest in This Litigation

Interworks failed to pay federal employment taxes in connection with both the public improvement contracts that are the subject of this litigation and other contracts. On August 2, 2002, the Internal Revenue Service ("IRS") filed a tax lien against Interworks in the amount of $686,403.18. The government later estimated Interworks' tax obligations to total $1,874,971.20, at least $557,129.29 of which allegedly arose out of public improvement contracts for which Merchant had provided

Interworks' accounts receivables plus 50 percent of Interworks' inventory.

7

financing to Interworks in return for a first priority lien on Interworks' accounts receivable and other property.

### Colonial's State-Court Lawsuit

On July 7, 2003, Interworks and two of its affiliates filed petitions for relief pursuant to Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York. Because Interworks was unable to complete performance of its public improvement contracts, Colonial, pursuant to the surety agreement, made payments to sub-contractors and fulfilled Interworks' other obligations under the public improvement contracts. Between Interworks' debts to subcontractors, suppliers, and laborers, and Interworks' federal and state tax obligations for which Colonial, as surety, is potentially liable, Colonial allegedly incurred financial obligations of $1,750,076.90 and suffered claims against the bonds it had issued for Interworks in an amount thought to be in excess of $650,000.

As a provider of surety bonds in connection with Interworks' public improvement contracts, Colonial is a beneficiary of the Article 3-A trust funds that arise from payments made pursuant to those contracts. If those funds are diverted, Colonial is entitled to recover the amount it is owed from whomever diverted the funds, provided that such person was on notice, at the time the funds were diverted, that the funds were trust assets. N.Y. Lien Law §§ 77.1, 77.3(6).

In an effort to recoup its expenses and satisfy the liabilities it incurred as a result of Interworks' default on its public improvement contracts, Colonial brought suit against Merchant in New York State Supreme Court in May 2003. Colonial alleged that under Article 3-A, the funds Merchant received that had been paid to Interworks under the public improvement contracts were trust funds that Merchant, standing in Interworks' place as fiduciary to the trust, was required to pay to trust beneficiaries, and that instead of paying the beneficiaries of the trust created by the public improvement contracts, Merchant had in fact used the assets to satisfy Interworks' obligations to Merchant arising from their separate financing agreement. See Second Amended Compl. (filed Jan. 13, 2004) ¶¶ 28-74. Colonial, as a beneficiary of the trust, sought to be recognized as an authorized class representative of all beneficiaries of the Article 3-A trust. The court allowed Colonial to join another putative class representative, but held the motion in abeyance pending the outcome of a further hearing on class certification.

For reasons that are not readily apparent from the record, the United States did not seek to intervene in this state court action in an attempt to collect the unpaid employment taxes that Merchant, standing in Interworks' place as a result of the financing agreement between the two parties, owed on work stemming from the public improvement contracts.

Interworks' Federal Lawsuit and the
United States' Complaint-in-Intervention

9

In July 2005, Interworks brought a parallel suit under Article 3-A against Merchant in the United States District Court for the Southern District of New York -- the instant action -- seeking, among other things, the same relief Colonial sought in the New York State Court action. Interworks' complaint alleged that the Article 3-A beneficiaries to the public improvement contracts were required to be paid from the proceeds of Interworks' accounts receivables, which the financing agreement had placed in the custody and control of Merchant, and that Merchant's failure to satisfy Interworks' obligations to the Article 3-A trust fund beneficiaries amounted to a diversion of trust-fund assets.

Unlike the lawsuit in New York Supreme Court, in which the United States did not participate, the United States filed a complaint-in-intervention in this federal suit. It asserted that Merchant's failure to use trust-fund assets to satisfy the $557,129.29 or more that Interworks owed in employment taxes violated Article 3-A.[2] The United States brought the complaint-in-intervention in its own capacity, rather than as a representative of all Article 3-A beneficiaries.

The case was transferred from the Southern District to the Eastern District of New York in April 2006. In November

---

[2] The United States also named Colonial as a defendant for the sole purpose of establishing its relative priority of recovery should liability be found against Merchant. Colonial cross-claimed against Merchant under Article 3-A, relying on the same arguments it made in its New York action.

10

2007, the Eastern District court dismissed the underlying complaint with prejudice after Interworks indicated its intent to voluntarily discontinue the action[3] and failed to respond to an order to show cause. This left the issues raised in the United States' complaint-in-intervention and the cross-claims by Colonial as the only surviving issues for the district court's consideration.

Colonial and Merchant then jointly moved to dismiss the United States' complaint-in-intervention on the grounds that the United States had failed to comply with two procedural requirements of Article 3-A suits: (1) that there be no prior pending Article 3-A action, and (2) that such suits be brought in a representative capacity. Without denying that these requirements were provided for by statute and had not been satisfied, the government opposed the motion to dismiss on the grounds that Article 3-A does not apply to the United States and that, even if it did, the United States' power to enforce federal tax law in federal court either exempts it from compliance with or preempts the procedural requirements of Article 3-A.

The district court, finding the government to be in procedural default, granted the motion to dismiss. Interworks, 531 F. Supp. 2d at 482. Based largely on the fact that the United States had brought suit to enforce its Article 3-A rights

---

[3] It appears that Interworks' Chapter 11 bankruptcy case was converted into a Chapter 7 proceeding, and the Chapter 7 trustee declined to pursue the instant action.

11

under New York law, rather than to enforce a tax lien under federal law, the court rejected the government's argument that federal statutes that provide federal courts with original jurisdiction over actions brought to enforce the federal tax laws excuse the government from compliance with Article 3-A's procedural requirements.  Id. at 481.

The government appeals.

## DISCUSSION

Merchant's liability under Article 3-A for diversion of trust funds is not in dispute on appeal.  Nor does any party contest the United States' standing as a beneficiary of the trust to enforce its claim against Merchant for unpaid taxes, or the United States' priority relative to Colonial in recovering the diverted trust funds through a properly filed lawsuit.[4]  And the government concedes that its claim was not brought in conformance with the requirements set forth in Article 3-A.

The sole issue on appeal, then, is whether the United States is excused from compliance with two Article 3-A procedural requirements: (1) that a claimholder to an Article 3-A trust

---

[4] Section 77 of the Lien Law sets from the order of priority among claimholders to the trust, giving first priority to claims for taxes, unemployment insurance, and other employment-related contributions.  N.Y. Lien Law § 77.8(a).  Colonial, as a completing surety to Interworks, is equitably subrogated to the same rights of Interworks in the contract and cannot satisfy its claims against Merchant until all 3-A trust beneficiaries are first satisfied.  See Titan Indem., 135 F.3d at 834 ("It is perfectly clear that the rights of a surety in the trust proceeds do not trump those of the Article 3-A trust fund beneficiaries.").

12

bring a "representative action . . . for the benefit of all beneficiaries of the trust," and (2) that "no other such action [be] pending at the time of the commencement" of the Article 3-A claim. N.Y. Lien Law §§ 77.1, 77.2. The government does not contend that it complied with these requirements. It asserts instead that its compliance is unnecessary. We conclude that where the United States brings an action pursuant to Article 3-A, it is bound by the procedural requirement that there be no prior pending Article 3-A action. Because the United States procedurally defaulted by not meeting this requirement, we therefore affirm the judgment of the district court. We need not decide whether the government was bound by, or should have been granted leave to comply with, the representative capacity requirement.

I. Standard of Review

We review a district court's decision to grant a motion to dismiss for failure to state a claim upon which relief can be granted de novo, taking the factual allegations in the complaint to be true and drawing all reasonable inferences in the non-movant's favor. City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 392 (2d Cir. 2008).

II. The "No Other Pending Action"
    Requirement of Article 3-A

The United States did not intervene in Colonial's prior Article 3-A state action. Instead, it intervened in the federal action brought by Interworks two years after the action in New

13

York State Supreme Court had begun. The district court concluded that this was improper under Article 3-A, which provides in relevant part that "successive actions may be maintained from time to time . . . provided no other such action is pending at the time of the commencement thereof." N.Y. Lien Law § 77.2; Interworks, 531 F. Supp. 2d at 481 ("[T]he United States is subject to Article 3-A's prohibition against prior pending actions when asserting its Article 3-A rights . . . .").

The government does not contend that Colonial's prior state court action was not a prior pending action for the purposes of section 77.2; nor could it, see, e.g., Premier Elec. Constr. Corp. v. Sec. Nat'l Bank of Long Island, 39 A.D.2d 967, 968, 334 N.Y.S.2d 199, 200 (2d Dep't 1972) (interpreting section 77.2 to apply to a subsequent action brought by "a new plaintiff who could be said to be a member of the class which the plaintiff bringing the first action intended to benefit."). Instead, the United States offers three separate reasons why it should be excused from compliance with Article 3-A's procedural requirements: (1) Article 3-A does not apply to actions by the United States; (2) even if Article 3-A applies to actions by the United States, the United States has an unqualified right to bring this action in federal court pursuant to its power to enforce the federal tax code under 26 U.S.C. § 7402; and (3) to the extent that Article 3-A conflicts with 26 U.S.C. § 7402, Article 3-A is preempted.

A. Application of Article 3-A to the United States

14

The United States' first argument, relying primarily on Leiter Minerals, Inc. v. United States, 352 U.S. 220 (1957), is that Article 3-A does not apply to it because the statute lacks express words so indicating. We implicitly rejected this argument in United States v. Certified Indus., Inc., 361 F.2d 857, 862 (2d Cir. 1966), where we assumed that the United States would be subject to Article 3-A's statute of limitations. We now explicitly reject the argument, joining at least one district court in our Circuit that has, in analyzing Article 3-A's representative capacity requirement, found the statute's procedural requirements to be applicable to the United States. See Quantum Corporate Funding v. Bast Hatfield, Inc., No. 5:04-cv-137, 2005 WL 1926610, at *6, 2005 U.S. Dist. LEXIS 14222, *18-*23 (N.D.N.Y. June 8, 1995).

As support for its argument, the government cites to a heavily qualified canon of statutory construction recognized in Leiter, which it portrays as a rule of general and wide-ranging applicability: that "'statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect.'" Leiter, 352 U.S. at 224 (quoting United States v. United Mine Workers, 330 U.S. 258, 272 (1947)). The canon is inapplicable to the facts of this case. Article 3-A does not divest the United States of any "pre-existing rights." The rights the United States seeks to enforce are Article 3-A trust fund rights that are created by, and do not exist apart from, the statute itself. These rights

15

therefore cannot be understood as "pre-existing," and the canon therefore does not apply.[5]

The government argues that applying Article 3-A would frustrate its power to collect federal taxes in federal court. Appellant's Br. at 30. This argument fails because, as discussed further below, an Article 3-A suit does not impede the government's ability to bring an action to enforce taxes owed by any party. See infra Part II(B). Even if the United States is unsuccessful in its Article 3-A suit, it may still bring a tax enforcement action against Merchant or any other party to collect unpaid employment taxes that arose out of contracts at issue here.

Article 3-A does create, subject to certain procedural limitations, a right for some parties to act by lien or foreclosure against these trust fund assets. It provides that right to the United States, too. But the United States has no pre-existing right to these specific assets because, to obtain such a right, it must prevail in the Article 3-A suit, subject to Article 3-A's limitations.

---

[5] The Interworks district court distinguished Leiter on different grounds, viewing the holding as applicable only where the United States' position was defensive. See Interworks Sys., 531 F. Supp. 2d at 482 (citing United States v. Certified Indus., Inc., 361 F.2d 857, 860 n.2 (2d Cir. 1966)). Inasmuch as we conclude that Leiter does not render Article 3-A inapplicable to the United States because it did not divest the United States of pre-existing rights, we need not and do not address whether the district court's interpretation of Leiter was correct.

For this reason, we find that Article 3-A applies to the United States.[6]

B. Supremacy of and Preemption by 26 U.S.C. § 7402

The government argues that even if Article 3-A is applicable to the United States, it may nonetheless intervene in this federal court action because Congress has elsewhere manifested an intent to provide the United States with an "unqualified right to have [such] case[s] heard in federal court." Appellant's Br. at 23. It relies on 26 U.S.C. § 7402, which vests the district courts of the United States with jurisdiction to hear civil actions and to render such judgments and decrees "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). It points out that the statute provides that these remedies are "in addition to and not exclusive of any and all other remedies

---

[6] Although we do not rely on them, we note that there are other possible reasons that Leiter's canon of statutory construction probably does not apply here. For example, Leiter applies only to statutes that divest the United States of pre-existing rights "in general terms." Leiter, 352 U.S. at 224. We very much doubt that Article 3-A fits this description. See N.Y. Lien Law § 71.2(c) (providing that trust assets shall be used to satisfy the payment of employment taxes); id. § 77.8(a) (discussing the priority of tax authorities in relation to other beneficiaries of the trust).

And even if we were to apply Leiter's canon, the other statutory construction factors discussed in Leiter, see Leiter, 352 U.S. at 225-26 (looking to legislative intent, the purpose of the statute, a reading of the statute as a whole, and whether applying the canon would foreclose the ability of the United States to finally determine the basic issue in the litigation, in deciding whether to apply the canon), would support the district court's construction of Article 3-A, not that of the government.

17

of the United States in such courts or otherwise to enforce such laws." Id.

At the heart of the government's argument is the proposition that New York State Article 3-A and federal statute 26 U.S.C. § 7402 are in conflict, and that by being forced to proceed in state court to assert its Article 3-A rights, the government is impeded from asserting its right to collect taxes in federal court. But the district court ruling did not inhibit the United States' ability to bring a tax enforcement action in federal court. The government may bring such an action to assert its rights to tax, and to collect taxes against, Interworks, Merchant, or any other party. The district court held only that if the United States chose to bring an action under Article 3-A of the New York Lien Law to enforce a right created by New York statute against specific funds impressed by a state-created trust, it was required to comply with the procedural requirements of that state statute. See Interworks Sys., 531 F. Supp. 2d at 481-82.[7]

To be sure, the result of the district court ruling is that the United States could not collect certain specific assets of Merchant in federal court. But the ruling in no way impeded

_____

[7] The United State relies heavily on the argument that its action is in personam rather than in rem or quasi in rem. That question is irrelevant to this appeal. The distinction between in personam and in rem cases that the United States seeks to draw from Certified and Leiter related to whether an injunction against state court proceedings could issue, not whether the United States should be held to the procedural requirements of a state statute.

18

or otherwise had an impact on the ability of the United States to litigate, in federal court, as to Merchant's legal obligations to pay the federal taxes in question.

The government has conceded that this action is not an action to enforce a tax lien. See Transcript of Pre-Motion Conference, Interworks Sys. Inc. v. Merchant Fin. Corp., No. 06-cv-1981 at 13 (S.D.N.Y. Nov. 29, 2007) (Counsel for United States: "We're not seeking to enforce a lien."). Instead, the government is seeking to establish a state-law-created right to certain trust fund assets that would allow it to obtain a tax lien. In other words, even if the United States has a right to collect taxes from Merchant, it has no right to use these specific trust-fund assets to satisfy Merchant's tax obligations until it has prevailed in its Article 3-A suit. See Aquilino v. United States, 363 U.S. 509, 513 (1960) (finding that state law governs the nature of the legal interest in the property to be taxed by the federal government).

We have recognized in the past that the United States is not divested of any rights by being forced to proceed in state court under Article 3-A. See Certified, 361 F.2d at 861-62. Article 3-A facilitates rather than impairs the ability of the United States to bring federal tax collection actions, by designating first priority for distribution of trust assets to "trust claims for taxes and for unemployment insurance and other contributions, due by reason of employments, and for amounts of

19

taxes withheld or required to be withheld."  N.Y. Lien Law §
77.8.

The cases on which the United States relies, such as
Markham v. Allen, 326 U.S. 490 (1946), do not require a contrary
result.  They stand at most for the proposition that if the
United States seeks to enforce a federal right that is permitted
by statute to be litigated in federal court, then the United
States cannot be compelled to litigate in state court.  See id.
at 495-96 (allowing a lawsuit to enforce rights under the Trading
with the Enemy Act to proceed in federal court, even though
resolution of the case required the federal court to make a
determination of rights to a decedent's estate that are within
the jurisdiction of state probate court).  Here, however, the
United States is not seeking to enforce a federal right to
collect taxes.  It is asserting a state right to be deemed a
beneficiary of a state-law-created trust.

For similar reasons, we reject the United States'
argument that the Supremacy Clause of the United States
Constitution, Art. VI, cl. 2, mandates that New York's Article 3-
A is preempted because it conflicts with 26 U.S.C. § 7402.
Appellant's Br. at 55-57.  As explained above, Article 3-A is not
a tax statute and is not in conflict with 26 U.S.C. § 7402(a).
Resolution of the Article 3-A claim would not foreclose an action
to enforce the federal tax laws in district court under 26 U.S.C.
§ 7402(a).  Even if the United States were adjudicated not to be
a beneficiary under the Article 3-A trust to these trust fund

20

assets, this would not inhibit the United States from bringing an action against Merchant to collect unpaid employment taxes relating to these public employment contracts.

We will not conclude that a state statute was "'superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress.'" Altria Group, Inc. v. Good, 129 S.Ct. 538, 543 (2008) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Even when Congress expresses an intent to preempt, if the statute can plausibly be read not to preempt in an individual case, courts are to "'accept the reading that disfavors pre-emption.'" Id. (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005)). Inasmuch as we conclude that there is neither a conflict between Article 3-A and the power to enforce federal tax laws, nor an intent by Congress to preempt Article 3-A, a finding of federal preemption is not warranted here.

III. The Representative Capacity Requirement
of Article 3-A

For the reasons that the "no pending action" requirement applies to the United States, it would appear that the United States is also bound by the "representative capacity" requirement of Article 3-A, as the district court held. Inasmuch as we affirm the district court's dismissal for lack of compliance with the "no pending action" requirement, however, we need not decide whether that is so or address whether the district court committed error by refusing to allow the United

21

States to amend its complaint to conform with the representative capacity requirement.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.